Cratsley, J.
Plaintiffs, Anne Cowles and Susan Handrahan, brought claims of handicap discrimination against their employer, defendant Red Roof Inns [Red Roof] alleging that both had been terminated unlawfully because they had epilepsy. After a nine-day trial the jury entered judgment for plaintiff Susan Handrahan and awarded her $1,705,000 in damages, which included $55,000 in back pay, $50,000 in emotional distress, $600,000 in front pay, and $1,000,000 in punitive damages.[1] Red Roof moves for judgment notwithstanding the verdict or a new trial and in the alternative moves to amend the judgment as to the calculation of prejudgment interest and for a remittitur of damages. Plaintiff moves for attorneys fees and costs pursuant to M.G.L.c. 151B. As the evidence considered in the light most favorable to the plaintiff, with all reasonable inferences drawn in her favor, warranted the jury’s finding that plaintiffs allegedly poor job performance was merely a pretext for handicap discrimination, defendant’s motions for judgment notwithstanding the verdict and new trial are DENIED. Defendant’s motions to amend the judgment and for remittitur, however, are ALLOWED, in part, as set forth herein. Plaintiffs motion for attorneys fees is ALLOWED, in part, as set forth herein.
ASSESSMENT OF PREJUDGMENT INTEREST
M.G.L.c. 231, §6B provides that “In any action . . . for pecuniary damages for personal injuries to the plaintiff or for consequential damages . . . there shall be added by the clerk of court . . . the amount of interest thereon at the rate of twelve per cent per annum from the date of commencement of the action . . .’’ It is well settled that “the primary purpose” of M.G.L.c. 231, §6B is “to compensate a damaged party for the loss of use of the unlawful detention of money.” Conway v. Electro Switch Corp., 402 Mass. 385, 390 (1988); see also Mirageas v. Massachusetts Bay Transp. Auth., 391 Mass. 815, 821 (1984); Bernier v. Boston Edison Co., 380 Mass. 372, 388 (1980); Makino, U.S.A. v. Metlife Capital Credit Corp., 25 Mass.App.Ct. 302, 320-21 (1988). The award of prejudgment interest may only be added to make the plaintiff whole with respect to any lost wages, benefits, and emotional distress she has suffered from the date of the commencement of the action through to the date of judgment. Bournewood Hosp., Inc. v. M.C.A.D., 371 Mass. 303, 315 (1976); Fontaine v. Ebtec Corp., 415 Mass. 309 (1993); Franklin Publishing Co. v. M.C.A.D., 25 Mass.App.Ct. 974 (1988). “The damaged party is entitled to a return on the money that the party would have had but for the other party’s wrongdoing. To give the damaged party more than that would go beyond the purpose of the statute.” McEvoy Travel Bureau, Inc. supra, at 717. There is “no justification for adding interest to damages which, by definition, are for losses to be incurred in the future.” Conway, supra Prejudgment interest “cannot reasonably be said to apply to an award of damages based upon lost earnings and benefits occurring after the date of judgment... under G.L.c. 15 IB §9, prejudgment interest may not be added to an award of damages for lost future earnings and benefits.” Conway, supra at 390-91.
*188 In this case, the clerk added statutoiy interest on plaintiffs entire $ 1,705,000judgment for a total interest award of $647,900. Consistent with Massachusetts case law, 38% interest was correctly added to plaintiffs compensatory awards of back pay and emotional distress in order to make her whole. The clerk was in error, however, to calculate interest for plaintiffs front pay and punitive damages awards. As the former corrects for a future harm and the latter serves to punish the wrongdoer neither can be construed as compensating the plaintiff for the unlawful detention of her money, the clear intent of M.G.L.c. 231 §6B. Accordingly, this Court holds that plaintiffs interest award shall be reduced from $647,900 to $39,900.[2]
ASSESSMENT OF FRONT PAY AND PUNITIVE DAMAGE AWARDS
The review of a civil jury verdict must “proceed with great deference for the jury’s assessment . . . such a verdict will be reduced or set aside only if it is shown to exceed any rational appraisal or estimate of the damages that could be based upon the evidence before the jury.” Segal v. Gilbert Color Systems, Inc., 746 F.2d 78 (1st Cir. 1984). “The jury’s otherwise supportable verdict stands unless ‘grossly excessive’ or ‘shocking to the conscience.’ ” Fishman v. Clancy, 763 F.2d 485 (1985), citing LaForest v. Autoridad de Las Fuentes Fluviales De P.R., 536 F.2d 443, 447 (1st Cir. 1976).
M.G.L.c. 151B, §9 (1986 ed.) provides, in relevant part, that “(a]ny person claiming to be aggrieved by a practice made unlawful under this chapter . . . may . . . bring a civil action for damages or injunctive relief or both ...” Further, it is intended by the legislature that “the provisions of this chapter shall be construed liberally for the accomplishment of the purposes thereof.” Id. Beyond this broad legislative directive, the antidiscrimination statute offers little guidance as to the appropriate method of calculation for the amounts of damages to be awarded to a successful plaintiff.
Nonetheless, it is well established that front pay is to be awarded where reinstatement is not feasible and where such an award is necessary to return the plaintiff “as nearly as possible to the economic situation s/he would have enjoyed but for the illegal discharge.” Wildman v. Lerner Stores, 771 F.2d 605, 615 (1 st Cir. 1985). Generally, for a plaintiff to recover front pay damages “as with claims for back pay, the employee has a duty to mitigate damages by seeking alternative employment.” Conway supra at 389. The burden of proof on the issue of mitigation rests with the defendant to show (a) that comparable employment is or will be available to plaintiff and (b) that it is reasonably likely that the plaintiff will obtain one of those comparable jobs. Black v. School Committee of Malden, 369 Mass. 657, 661-62 (1976). A plain tiff will not be bound by her failure to seek other employment immediately upon her termination; however, a front pay award should only compensate a plaintiff for the loss of future earnings which are causally attributable to defendant’s wrongful conduct and must be limited to the amount which will make a plaintiff whole. Id.; Conway supra at 388-89.
With regard to punitive damages, “once the district court determines that awarding punitive damages is within the jury’s discretion . . . they should engage in a balancing test taking into consideration such factors as the grievousness of the conduct, the solvency of the guilty party, and the potential for deterrence of the verdict.” Rowlett v. Anheuser-Busch, Inc., 832 F.2d 194, 207 (1st Cir. 1987); see also Smith v. Wade, 461 U.S. 30. The award should be sufficient to “smart” so that the defendant and similar employers are deterred from engaging in such conduct in the future. To be sure, where the evidence of discrimination is “close,” the “apparent isolation of the discrimination [is] proved,” and “generous compensatory damages” are awarded, such a combination of factors “counsels some restraint in the amount of the award.” Id.
In this case, plaintiff Susan Handrahan was awarded $600,000 in front pay and $1,000,000 in punitive damages. Defendant contends that both amounts are excessive in light of the great weight of the evidence presented to the jury at trial. This Court agrees.
EXCESSIVENESS OF FRONT PAY AWARD
Plaintiff Susan Handrahan was earning approximately $14,000 in wages plus benefits in her job as a housekeeper at Red Roof at the time of her termination. She began working at Red Roof upon graduation from high school and remained there for eight years before the onset of Red Roof Inns’ alleged handicap discrimination against her.[3] Plaintiffs front pay award of $600,000 reflects the jury’s calculation of her approximate salary and benefits for a thirty-year period from the age of thirty-one (the age of her termination) through age sixty-two (her probable age of retirement).[4] It is clear that the jury credited plaintiffs testimony that she intended to work at Red Roof Inns, her first and only full-time job, for the rest of her working life.[5] The jury’s conclusion that plaintiff would have been retained by Red Roof for those many years into the future, but for her handicap, is also a permissible inference in light of plaintiffs favorable work record at Red Roof.[6] However, in assessing plaintiffs front pay award the jury erred in failing to consider plaintiffs duty to mitigate her damages. While the issue of mitigation is one of fact for the jury, it is a matter of record that plaintiff was able to secure a $6.50/hr. j ob as a locker room attendant in a country club from May to September in 1992 and has worked there for two consecutive seasons to date. In light of this evidence, this Court must rule as a matter of law that plaintiff is capable of at least minimally mitigating her damages by continuing to obtain such part-time work in the future. While the jury could have reasonably found that plaintiff will not likely secure another *189 housekeeping position identical to her job at Red Roof, the jury failed to discount from their calculation plaintiffs likely attainment of at least comparable part-time employment throughout her working life which would constitute mitigation of her front pay award. This is not a case where the plaintiff, as a result of the defendant’s wrongful conduct, is physically or emotionally incapable of ever working again; nor is this a case where the plaintiff is approaching retirement age and will not likely be able to secure suitable employment before reaching retirement such that a front pay award through to retirement age might be appropriate. Here, both plaintiff and her therapist testified that upon the trial’s conclusion, plaintiff would be able to pursue new employment opportunities with reasonable diligence.[7] The jury’s award of lifetime front pay is thus in direct conflict with the weight of the evidence adduced at trial as to plaintiffs ability to comply with her ongoing duty to mitigate. Such an award fails to reasonably calculate plaintiffs lost future wages in light of uncontroverted evidence that plaintiff is capable and is likely to secure employment commensurate with her basic skills throughout her working life. This Court thus holds that plaintiffs front pay award should be remitted from $600,000 to $487,800 to reflect the reasonable likelihood of some mitigation of her front pay damages.[8]
EXCESSIVENESS OF PUNITIVE DAMAGES AWARD
Consistent with M.G.L.c. 151B §9, this Court determined that it was within the jury’s discretion to award punitive damages if they found the defendant’s conduct to be outrageous and instructed the jury accordingly.[9] The jury returned a verdict for plaintiff finding that defendant had intentionally discriminated against plaintiff because of her handicap and awarded her $1,000,000 in punitive damages. While juries generally have broad discretion in assessing punitive damages awards, this Court finds the $ 1 million award “grossly excessive.” The case of Rowlett v. Anheuser-Buschlnc., 832F.2d 194, 206 (IstCir. 1987), cautions that a court “cannot sanction the jury’s attempt to grant a windfall to a sympathetic plaintiff.” In that case, the jury found that Anheuser-Busch had intentionally discriminated against Rowlett because of his race and awarded plaintiff $176,000 in back pay, $123,000 in emotional distress, and $3,000,000 in punitive damages. The First Circuit found that although the evidence of discrimination was sufficient to allow punitive damages to go to the jury, such evidence was “hardly overwhelming.” Id. While the discrimination suffered by the plaintiff was “worthy of some outrage” the Court held that “the large compensatory damage award, by itself, provide[d] significant deterrence, even to employers as large as Anheuser-Busch.” Id. Here, too, the evidence of discrimination against plaintiff by one of defendant’s managers was less than “overwhelming.”[10] Plaintiffs compensatory award, even after remittitur, is still quite large. While plaintiff contends that the punitive damages award should be sustained as it amounts to less than 1% of defendant’s net worth,[11] such an argument fails to acknowledge, as the Court did in Rowlett, that the loss of a discrimination suit, “by itself,” will have a deterring effect on the defendant and other like-minded employers. Id. at note 8. Based on the record before the jury, a punitive damages award of $100,000 is sufficient in this case. This Court is satisfied that this punitive damages award, coupled with plaintiffs compensatory damage award of $632,700,[12] compounded by the loss of the discrimination suit itself, is “sufficient to deter it or any other rational employer from repeating such conduct in the future.” Id. at 207.
ATTORNEYS FEES
Pursuant to M.G.L.c. 151B, §9, plaintiff moves for an assessment of attorneys fees in the amount of $108,892.00 plus costs in the amount of $1,504.94. The statute provides in relevant part: “If the court finds for the petitioner it shall, in addition to any other relief and irrespective of the amount in controversy, award the petitioner reasonable attorneys fees and costs unless special circumstances would render such an award unjust." The amount of a reasonable award “is largely discretionary with the judge, who is in the best position to determine how much time was reasonably spent on a case, and the fair value of the attorneys services.” Fontaine v. Ebtec Corp., 415 Mass. 309 at 324 (1993). Massachusetts courts have adopted the “lodestar method” to compute these awards. Denton v. Boilermakers Local 29, 673 F.Supp. 37, 52 (D. Mass. 1987). This method requires the court to make findings as to the hourly rate that would reasonably compensate the attorney for his work on the case and the number of hours that were reasonably necessary to litigate the case. To arrive at a “reasonable fee,” the court simply multiplies these numbers. Id. The parly seeking recovery of attorneys fees may introduce evidence of prevailing market rates in the community. The court, however, has discretion to award different hourly rates for attorney fees for different types of work and need not accept an attorney’s valuation of his own time. Id. Further, a court may deduct any hours that appear to be excessive or duplicative as such efforts ought not be compensable. Id.; see also Grendel’s Den Inc. v. Larkin, 749 F.2d 945, 950 (1st Cir. 1984). The party seeking fees has a duly to submit “detailed and contemporaneous time records” as documentation of hours spent on the case excluding all such “excessive, redundant, or otherwise unnecessary” expenditures. Supra, at 53. Failure to do so may “justify a drastically reduced award.” Id. An award of attorneys fees calculated by the lodestar method “aims to attract competent legal counsel for those with meritorious claims .. . [and] is not designed to provide a windfall recovery of fees.” Fontaine, supra, at 326.
*190 In this case plaintiffs counsel, Douglas Stoddart, requests compensation for $108,892.00 plus costs of $ 1,504.94 representing a total of437.40 billable hours spent on the case. As this calculation does not discount for time spent exclusively on plaintiff Annie Cowles’ case nor for time generally subsumed under both clients’ names, this Court holds that the amount of reasonable attorneys fees and costs to be awarded is considerably less than the amount requested.
Throughout the billing period from January, 1992 to June 18, 1995 Mr. Stoddart records his billable hours at a rate of $160/hr. and increases that rate to $200/hr. for the trial period, yet he requests to be compensated at arate of $250/hr. to reflect the market rate for attorneys experienced in trying this type of case. As an attorney’s expertise in a particular area of law is the primary reason for higher compensation and Mr. Stoddart’s wealth of trial experience has primarily been in prosecuting criminal cases, Mr. Stoddart’s request to be compensated at a rate of $250/hr., the market rate for senior trial attorneys with greater than seventeen years of experience, is not warranted in this case. Rather, Mr. Stoddart’s billable rate of $160/hr. is commensurate with his civil litigation experience and performance in this case.
With regard to the reasonable amount of hours spent on the case, while Mr. Stoddart did try both plaintiffs’ cases together, his contemporaneous billing records indicate that he spent time preparing separate cases for Susan Handrahan, the prevailing plaintiff, and Annie Cowles, the losing plaintiff. As M.G.L.c. 151B, §9 only authorizes a fee award to a prevailing plaintiff, defendant is not required to compensate Mr. Stoddart for time spent on plaintiff Cowles’ case.[13] After reviewing Mr. Stoddart’s billing slips, this Court will deduct from a total of 437.40 hours all of the time he spent exclusively on Annie Cowles’ case and half of the total hours attributable to both cases arriving at the figure of 222.60 hours reasonably spent on the preparation and trial of Handrahan’s successful claim of discrimination.[14] Accordingly, Mr. Stoddart shall be awarded compensation for 222.60 hours at $160/hr. for a total of $35,616.00. Similarly, with regard to costs, Mr. Stoddart shall be awarded $1,026.85 reflecting those costs incurred in litigating Handrahan’s claim and half of those costs attributable to both plaintiffs.
ORDER
For the foregoing reasons, it is hereby ORDERED that defendant’s motions for judgment notwithstanding the verdict and for new trial are DENIED. Defendant’s motions for an amendment of judgment and for remittur are ALLOWED. Plaintiffs motion for attorneys fees is ALLOWED. A Final Judgment shall enter in this case for $732,700, subject to plaintiffs right pursuant to Mass.R.Civ.P. 59(a) to reject this remittitur and claim a new trial.

The juiy found that Red Roof did not discriminate against the other plaintiff, Annie Cowles.

his amount reflects an addition of 12% per annum to the back pay and emotional distress awards of $105,000 totaling 38% interest from the date of filing, April 30, 1992, to the date of judgment, June 30, 1995.

Plaintiff suffered an epileptic seizure at her home on April 10, 1991, which the jury found was communicated to Red Roof. She was then issued three successive warnings about her work performance and ultimately terminated seven weeks later.

This calculation presumably reflects any annual salary increases and lost benefits that would have accrued had plaintiff remained at Red Roof until her retirement age.

Plaintiff is learning disabled and plaintiffs therapist testified that plaintiffs job at Red Roof was well suited to her because it provided stability and repetition.

It was undisputed that before plaintiffs seizure she had worked at Red Roof for eight years without warnings or reprimands of any kind regarding her periodic lateness in cleaning her allotted rooms. As reflected in her performance evaluations and testimony at trial, management had always regarded her as a good and hardworking employee.

Plaintiffs therapist opined that there are jobs available through the Massachusetts Rehabilitation Commission for which plaintiff is qualified.

This remittitur approximates plaintiffs likely future wages to fall somewhere between $4.00-$7.00/hr. for a seventeen-week period of full-time work per year, reflecting plaintiffs likely ability to continue to secure full-time employment for at least one third of each working year until retirement (i.e. if plaintiff earns $7.00/hr. x 40hr./wk. x 17 wks./yr. x 30 yrs. = $142,800; if plaintiff earns $4.00/hr. x 40hr./wk. x 17 wks./yr. x 30 yrs. = $81,600. Taking the average of these two scenarios would leave plaintiff earning approximately $112,200 over the thirty-year period for which the jury awarded front pay. Reducing the award by this amount should leave plaintiff with a front pay award of $487,800.

The jury was instructed that if they found that defendant’s conduct was motivated by an evil motive or was in reckless disregard to the rights of others they may award punitive damages for the purpose of punishment and as a deterrent to others to engage in such outrageous conduct. See Smith v. Wade, 461 U.S. 30; Rowlett v. Anheuser-Busch Inc., 832 F.2d 194 (1st Cir. 1987).

The issue of Red Roofs knowledge of plaintiffs epilepsy, which the jury resolved against the defendant, turned on one series of telephone calls and internal Red Roof conversations on or about April 11, 1991.

 Mr. James Bradley, plaintiffs expert witness on the budget motel industry, testified that Red Roof Inns, Inc. was worth at least $620 million as reflected in Morgan Stanley’s purchase price in 1993.

This amount includes an addition of 38% prejudgment interest on the back pay and emotional distress awards from $105,000 to $144,900.

The different outcomes for Handrahan and Cowles is in itself indicative of the separateness of the claims. Moreover, the two plaintiffs were often treated separately during discovery. For example, the hotel manager who was found to have discriminated against Handrahan was deposed twice — once with respect to Handrahan’s case and once with respect to Cowles’ case. Clearly, Mr. Stoddart should not be compensated for the latter, regardless of any concomitant benefit it might have had on the prevailing plaintiffs case.

Defendant’s contention that Mr. Stoddart’s billable hours should be reduced by two-thirds because two of plaintiff Handrahan’s three claims were dismissed in November *191 1993 is unpersuasive. “Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee . . . the fee award could not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. . . litigants in good faith may raise alternative legal grounds for a desired outcome, and the court’s rejection of a failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters." Hensley v. Eckerhart 461 U.S. 424, 435-36. Similarly, the Court of Appeals for the First Circuit has acknowledged Hensley, holding that “when a civil rights suit consists of multiple claims, and when the plaintiff prevails on some of them but not others, the plaintiff is entitled to fees worked not only on the successful civil rights claims, but also on other claims involving a ‘common core of facts.’ ” Aubin v. Fudala, 782 F.2d 287, 291 (1st Cir. 1986). As Handrahan’s three causes of action consisted of a claim of employment discrimination under M.G.L.c. 151B, a claim of employment discrimination under the Massachusetts Constitution, and a claim of breach of a covenant of good faith and fair dealing, all three claims certainly arose out of the same set of facts and dismissal of the latter two at the summary judgment stage has no bearing on the calculation of reasonable attorneys fees.